UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IRVIN DURAN,                        )
                                    )
          Plaintiff,                )
     v.                             )          CIVIL ACTION
                                    )          NO. 08-10527-MLW
ANDREA J. CABRAL, GERARD            )
HORGAN, PAUL DEFAZIO and )
RACHELLE STEINBERG,                 )
                                    )
          Defendants.               )


## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS

March 5, 2010

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiff Irvin Duran ("Duran"), a former inmate at the Suffolk County House of

Correction ("HOC"), has brought this action pro se claiming that his federal and state

constitutional rights were violated as a result of his confinement in administrative

segregation at the HOC without justification and without prior notice and an opportunity

to be heard.  Specifically, by his Amended Complaint, Duran alleges that the

circumstances of his confinement in the administrative segregation unit constituted cruel

and unusual punishment in violation of the Eighth Amendment and Article 26 of the

Massachusetts Declaration of Rights, and deprived him of his right to due process under

the Fourteenth Amendment.  (Am. Compl. (Docket No. 7) at 1st - 3rd Causes of Action).

Duran also claims that the defendants violated his right to due process by engaging in a conspiracy to deprive him of his liberty.  (Id. at 4th Cause of Action).  The defendants include the Sheriff of Suffolk County, Andrea Cabral; HOC Superintendent Gerard Horgan; the HOC's Deputy Superintendent of Classification, Paul DeFazio; and the HOC's Assistant Director of Custody Assessment and Classification, Rachelle Steinberg. Duran has sued the defendants in both their official and individual capacities, and he is seeking compensation from them in the amount of $5 million.

The matter is before the court on the "Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" (Docket No. 18).  By their motion, the defendants contend that all of Duran's claims should be dismissed because the plaintiff failed to exhaust his administrative remedies prior to filing suit, as mandated by the Prison Litigation Reform Act of 1995 ("PLRA") and the Massachusetts Prison Litigation Act, Mass. Gen. Laws ch. 127, § 38F ("§ 38F"), and because his allegations otherwise fail to state a claim for relief. Duran did not file a timely opposition to the motion.

Upon consideration of the unopposed motion to dismiss, this court determined that the question raised by the defendants as to whether Duran had exhausted his administrative remedies should be treated as a motion for summary judgment.  Accordingly, on December 10, 2009, this court notified the parties that it would consider that issue under a summary judgment standard of review, and it ordered the parties to supplement the pleadings and to submit evidence directed to the issue of exhaustion.  (See Docket dated 12/10/09).  It further notified the parties that the remaining issues raised by the

-2-

defendants' motion would not be converted to a motion for summary judgment, but would be considered under a motion to dismiss standard of review.  (See id.).  On January 26, 2010, the defendants submitted supplemental materials pursuant to this court's order.  Duran filed a response on February 24, 2010, but did not submit any evidentiary materials.

For all the reasons detailed below, this court finds that the undisputed facts set forth in the record establish that Duran failed to exhaust his administrative remedies before filing the instant lawsuit.  Accordingly, this court recommends to the District Judge to whom this case is assigned that the defendants' motion to dismiss be ALLOWED.

## II.  STATEMENT OF FACTS

Because this court finds that the issue of exhaustion is dispositive of Duran's claims, this court will treat the defendants' motion as one for summary judgment.  The following facts are based on the undisputed evidence submitted by the defendants in their January 26, 2010 supplemental filing.[1]

### Duran's Initial Transfer to Administrative Segregation

---

[1]  Specifically, the facts are derived from the exhibits attached to the defendants' "Supplemental Filing as Per This Court's Order of December 10, 2009" (Docket No. 28).  They include the "Suffolk County Sheriff's Department Inmate Guide" ("Inmate Guide"), the Affidavit of Rachelle Steinberg ("Steinberg Aff.") and the Affidavit of Steven C. Broderick ("Broderick Aff.").  Although the defendants' facts are uncontroverted due to the plaintiff's failure to submit any evidence of his own, this court remains obliged to draw all reasonable inferences in favor of the plaintiff.  See Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 25 (1st Cir. 2006).

Duran's claims in this action arise from his classification to the Administrative Segregation Unit ("ASU") at the HOC, and his continued confinement in that unit for seven months. (See, e.g., Am. Compl. ¶¶ 8-10, 17). The plaintiff was transferred from the facility's Special Housing Unit ("SHU") to the ASU on March 12, 2008. (Steinberg Aff. ¶ 8).[2] ASU is a Special Management Housing Unit at the HOC. (Id. ¶ 3). Generally, it is used to house inmates who have been found guilty of violence or pose a security risk to others. (Id.). It is also used to house inmates who must be kept separate from other inmates for safety reasons. (See id. ¶¶ 3-4).

According to the defendants, Duran was placed in the ASU pursuant to information provided by the Sheriff's Investigation Division ("SID") regarding Duran's inability to be housed safely with certain other inmates. (Id. ¶ 8).[3] Due to the plaintiff's problems with fellow inmates, the SID determined that ASU was the only housing unit in which Duran could be protected from harm. (See id. ¶¶ 8-9). During the time he resided in that unit, Duran was allowed to retain his property and, unlike other inmates in the unit, was permitted to leave his cell for recreation without being restrained. (Id. ¶ 9).

---

[2] Duran argues that the defendants' affidavits are "fraudulent" and that the Inmate Guide submitted by the defendants is outdated. (See Pl. Mem. (Docket No. 33) at 2-3). There is no support for the plaintiff's position. In particular, the plaintiff has not submitted anything to indicate that any of the information contained in the defendants' affidavits is untruthful or otherwise inaccurate. Moreover, although the Inmate Guide is dated October 2007, the plaintiff has presented no evidence to suggest that it was superseded or that the rules, policies and procedures contained therein were not in effect at the time of the events alleged in the Amended Complaint.

[3] Duran has alleged in his complaint that he was transferred to ASU in retaliation for complaints of staff misconduct.

On March 13, 2008, a formal classification hearing was held with respect to

Duran's housing assignment.  (Id. ¶ 10).  The plaintiff was notified and appeared at the

hearing.  (Id.).  Defendant Steinberg was also present at the hearing.  (Id.).  According to

Steinberg, Duran was informed that he had been moved from his housing unit to the ASU

for safety reasons.  (Id.).  He also was informed that he would be classified weekly and

then monthly, depending upon the status of his ability to be housed with other inmates.

(Id.).

## Duran's Failure to Appeal His Classification

Pursuant to the rules and policies in place at the HOC, challenges to housing

classification decisions must occur through an appeal process.  (See Inmate Guide at 10

("You cannot grieve a Classification . . . decision because there are procedures in place

for appeals")).  That process permits an inmate to appeal a classification decision within

five working days from the receipt of the decision by submitting a Classification Appeal

Form.  (Id. at 12; Steinberg Aff. ¶ 5).  Duran did not appeal the initial decision to transfer

him to the ASU.  (Steinberg Aff. ¶ 10).[4]

The plaintiff's housing classification was reviewed weekly between March 18,

2008 and May 20, 2008.  (Id. ¶ 11).  On each occasion, Duran was notified of the

---

[4] In his complaint, Duran alleges that on March 13, 2008, and at other times, he sent
several letters of complaint to the defendants.  (See, e.g., Am. Compl. ¶¶ 11-13, 19).  However,
he has failed to submit any information about the substance of these letters in opposition to the
defendants' motion to dismiss, despite being given a number of opportunities to do so.
Moreover, it is undisputed that he did not file the Appeal Form, which is required to initiate the
review process.

decision to have him remain in the ASU.  (Id.).  However, the plaintiff failed to appeal

any of those decisions.  (Id.).

On June 11, 2008, a formal hearing took place regarding Duran's housing

classification.  (Id. ¶ 12).  Duran received notice and appeared at the hearing.  (Id.).

During the hearing, Duran was given an opportunity to return to the SHU or to move into

general population.  (Id.).  The plaintiff declined the option to transfer and requested to

remain in the ASU.  (Id.).  The request was honored, and Duran did not appeal the

decision.  (Id.).

Another formal hearing on Duran's housing classification occurred on August 14,

2008.  (Id. ¶ 13).  Again, Duran was present at the hearing and was given an opportunity

to transfer to general population or the SHU.  (Id.).  Duran declined, and remained in the

ASU without objection.  (Id. ¶¶ 13, 17).

Subsequently, on August 15, 2008, Duran was transferred to the Plymouth County

House of Correction pursuant to his own request.  (Id. ¶ 14).  However, on August 25,

2008, Duran was returned to the HOC, allegedly because he was causing problems at

Plymouth, and placed in the ASU.  (Id. ¶ 14).  The plaintiff did not appeal this decision,

or a subsequent decision on September 11, 2008, that he continue to reside in the ASU.

(Id. ¶¶ 15, 17).

On October 23, 2008, Duran was transferred back to the SHU.  (Id. ¶ 15).  The

plaintiff agreed with the decision to return him to his former housing unit.  (Id.).

### Duran's Failure to File Grievances Regarding Loss of Good Time Credits

Duran claims that as a result of his confinement in the ASU, he was deprived of good time credits, which altered the length of his sentence. (Am. Compl. ¶ 18). Inmate complaints about earned good time are subject to the HOC's grievance policy, which applies to complaints about "a serious incident, living conditions, or how a certain policy or procedure is done." (Broderick Aff. ¶¶ 4, 6; Inmate Guide at 10). Under that policy, an inmate must first attempt to resolve the matter informally. (Broderick Aff. ¶ 5; Inmate Guide at 10). If the matter cannot be resolved informally, the inmate must file a written grievance with the Inmate Grievance Coordinator ("IGC") within ten days from the date of the challenged event. (Broderick Aff. ¶ 5; Inmate Guide at 10-11). The IGC is then responsible for conducting an investigation and for issuing a written response to the grievance. (Inmate Guide at 11). If an inmate is not satisfied with the IGC's response, the inmate may appeal to the Superintendent within ten days of the IGC's decision. (Id.; see also Broderick Aff. ¶ 5). The filing of an appeal constitutes the final step of the administrative process, and the Superintendent's decision is final. (Inmate Guide at 11).

During the time period from March 2008 to September 2008, Duran did not file any grievances relating to earned good time or the loss of earned good time credits. (Broderick Aff. ¶ 8). Therefore, he did not comply with the available administrative procedures for challenging the alleged deprivation.

Additional factual details relevant to this court's analysis are described below.

### III.  ANALYSIS

### A.  Summary Judgment Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclo-sure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227 (1ˢᵗ Cir. 1996) (quotations and citations omitted). A material fact is one which has "the potential to affect the outcome of the suit under the applicable law." Id. (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324, 106 S. Ct. at 2553. "[T]he nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1ˢᵗ Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1ˢᵗ Cir. 1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of

law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

### B.        Failure to Exhaust

At issue is whether the defendants are entitled to summary judgment on the grounds that Duran failed to comply with the exhaustion requirements of the PLRA and § 38F.  For the reasons described below, this court finds that the defendants are entitled to relief.

The exhaustion provision of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The exhaustion requirement extends to available administrative appeals as well as to primary grievance procedures."  Alexander v. Univ. of Mass. Med. Sch., Civil Action No. 09-10776-RGS, 2009 WL 4030815, at *1 (D. Mass. Nov. 20, 2009) (slip op.).  Moreover, it "'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  Id. (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 992, 152 L. Ed. 2d 12 (2002)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199, 211, 127 S. Ct. 910, 918-19, 166 L. Ed. 2d 798 (2007).  Similarly, Massachusetts law, specifically Mass. Gen. Laws ch. 127, § 38F, has established "an exhaustion requirement similar to that of the

[PLRA]."  Ryan v. Pepe, 65 Mass. App. Ct. 833, 835, 845 N.E.2d 1136, 1138 (2006).[5]

Accordingly, "[b]oth Federal and State law now expressly require inmates to exhaust

available grievance procedures before going to court."  Id. at 839, 845 N.E.2d at 1141.

The exhaustion requirement requires "proper exhaustion."  Woodford v. Ngo, 548

U.S. 81, 93, 126 S. Ct. 2378, 2387, 165 L. Ed. 2d 368 (2006).  "[T]o properly exhaust

administrative remedies prisoners must 'complete the administrative review process in

accordance with the applicable procedural rules' – rules that are defined not by the

PLRA, but by the prison [administrative] process itself."  Jones, 549 U.S. at 218, 127 S.

Ct. at 922 (quoting Woodford, 548 U.S. at 88, 126 S. Ct. at 2384).  Thus, "[p]roper

exhaustion demands compliance with [the prison's] deadlines and other critical

procedural rules because no adjudicative system can function effectively without

imposing some orderly structure on the course of its proceedings."  Woodford, 548 U.S.

at 90-91, 126 S. Ct. at 2386.

"The PLRA exhaustion requirement is an affirmative defense.  A defendant thus

bears the burden of proving a prisoner's failure to exhaust [his] administrative remedies."

Alexander, 2009 WL 4030815, at *1.  See also Jones, 549 U.S. at 216, 127 S. Ct. at 921

("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that

---

[5] Mass. Gen. Laws ch. 127, § 38F provides in relevant part that "[a]n inmate shall not file
any claim that may be the subject of a grievance under section 38E unless the inmate has
exhausted the administrative remedy established pursuant to section 38E ...."

inmates are not required to specially plead or demonstrate exhaustion in their complaints").[6]

In the instant case, the defendants have met their burden of demonstrating that Duran failed to exhaust his administrative remedies.  As described above, the plaintiff's claims in this action arise out of his classification to the ASU and his continued confinement in that unit for seven months.  As further described above, the undisputed facts establish that challenges to housing classification decisions at the HOC are subject to an appeal process, and that Duran never appealed his classification to the ASU although he had multiple opportunities to do so.  In particular, the record demonstrates that Duran failed to appeal the initial decision to confine him in the ASU in March 2008. (Steinberg Aff. ¶ 10).  Moreover, although the plaintiff's housing classification was reviewed repeatedly between March 18, 2008 and the time when he was returned to his former housing unit on October 23, 2008, and Duran was notified of the various decisions to keep him confined in the ASU during that period, the undisputed facts show that Duran never challenged any of those decisions through the appeal process.  (See id. ¶¶ 11-17). Therefore, his claims in this action are unexhausted.

---

[6]  Although the Massachusetts courts have not decided the question whether exhaustion under § 38F is a pleading requirement or an affirmative defense, it is not necessary to resolve that issue here.  Even assuming exhaustion is an affirmative defense under § 38F, the defendants have met their burden of proving that Duran failed to exhaust his administrative remedies.

To the extent Duran is attempting to assert a separate claim based on the loss of good time credits, the record establishes that this claim too is unexhausted.[7]  Specifically, the evidence shows that complaints about good time credit are subject to the HOC's grievance procedures, and that Duran submitted no grievances concerning his alleged loss of good time.  (See Broderick Aff. ¶¶ 6-8).  Therefore, Duran is precluded from pursuing such a claim in court.

Duran argues that "Plaintiff did exhaust his administrative Remedies through written forms of correspondence addressed to all Defendants which is considered a Form of Grievance."  (Pl. Mem. at 4).  This argument is insufficient to defeat summary judgment in the defendants' favor.  As an initial matter, Duran has not presented any evidence to support his contention that he complained to the defendants in writing regarding his confinement in the ASU or his loss of good time credits.  See LeBlanc v. Great Am. Ins. Co., 6 F.3d at 841 ("[T]he nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)).  Furthermore, the plaintiff has not established that the submission of any such correspondence complied with the applicable

---

[7]  Although the defendants argue that Duran has failed to exhaust his claim regarding the loss of good time credits, it is unclear from his Amended Complaint or his memorandum whether, in addition to his claims based on his confinement in the ASU, he is attempting to pursue a separate due process claim based on his loss of good time.  As detailed herein, to the extent he is attempting to pursue such a claim, he has not satisfied the exhaustion prerequisite for doing so.

procedures for filing grievances or appealing classification decisions at the HOC.

Therefore, Duran has failed to raise a genuine issue of disputed fact regarding the issue of

exhaustion.[8]

## IV.   CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to

whom this case is assigned that the defendants' motion to dismiss (converted to a motion

for summary judgment) (Docket No. 18) be ALLOWED.[9]

           / s / Judith Gail Dein
        Judith Gail Dein
        United States Magistrate Judge

---

[8]  Because Duran's failure to exhaust his administrative remedies warrants the dismissal of all of the claims set forth in the Amended Complaint, it is unnecessary at this time to address the merits of the defendants' arguments that Duran's Amended Complaint should be dismissed for failure to state a claim.

[9]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party ho objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).